UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| NORMAN W. T., )<br>)<br>      **Plaintiff** )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>*Acting Commissioner of Social Security,*[1] )<br>)<br>      **Defendant** ) | No. 2:20-cv-00275-NT |

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability (SSD) appeal raises the question of whether the administrative law judge (ALJ) supportably found that the plaintiff had no severe impairments of epicondylitis and tendinosis of the right upper extremity. The plaintiff seeks remand on the bases that the ALJ erred in (i) discounting the opinions of a treating physician and two examining physicians assessing right-arm limitations, (ii) purportedly relying on the opinions of two agency nonexamining consultants who found his right arm impairments severe but assessed inadequate limitations, and (iii) impermissibly interpreting raw medical evidence. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (ECF No. 12) at 2-8. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2020, Finding 1, Record at 17; that he had the severe impairments of status post-right knee arthroscopy for osteoarthritis and partial meniscectomy, status post-left wrist fracture, mild atrophy and post-surgical changes post-repair of left biceps detachment, Dupuytren's contracture of the left fourth finger and bilateral palms, status post-left epicondyle debridement, affective disorder, anxiety, and post-traumatic stress disorder (PTSD), Finding 3, *id*; that he had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he was able to lift 10 pounds frequently and 20 pounds occasionally with both arms, lift 10 pounds occasionally and five pounds frequently with his non-dominant left upper extremity, frequently push and pull no more than five pounds with his left upper extremity, frequently handle, finger, and feel with his left upper extremity, frequently handle with his right upper extremity, frequently stoop, occasionally kneel, crouch, and climb stairs and ramps, never crawl or climb ladders, ropes, or scaffolds, never be exposed to dangerous machinery, hazardous heights, or excessive vibration, occasionally be exposed to atmospheric conditions, but never in excessive amounts, was unable to work at a production rate pace, and, in addition to normal breaks, would be off task for five percent of the workday, Finding 5, *id*. at 20; that, considering his age (44 years old, defined as a younger individual, on his alleged disability onset date, November 30, 2015), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 31; and that he, therefore, had not been disabled from November 30, 2015, his alleged onset date of disability, through the date of the decision, October 29, 2019,

Finding 11, *id*. at 32-33.  The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than any past relevant work.  20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims.  *McDonald v. Sec'y of Health & Human Servs*., 795 F.2d 1118, 1124 (1st Cir. 1986).  At this step, a claimant must first produce evidence that he has a medically determinable physical or mental impairment(s), which "must be established by objective medical evidence from an acceptable medical source" rather than symptoms, diagnoses, or medical opinions.  20 C.F.R. § 404.1521.  When a claimant produces evidence of a medically determinable impairment, the commissioner may make a determination of non-disability at Step 2 only when

the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *McDonald*, 795 F.2d at 1124 (quoting Social Security Ruling 85-28).

## I.   Discussion

The ALJ found the plaintiff's epicondylitis and mild tendinosis of the right arm nonsevere, explaining, "his treatment notes show normal range of motion and strength."  Record at 18 (citations omitted).  The plaintiff asserts that this finding is unsupported by substantial evidence and affected by error of law, requiring remand.  *See* Statement of Errors at 2.

In this district, as the plaintiff acknowledges, *see id*. at 6, "an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim[,]" *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010).  The plaintiff argues that the asserted Step 2 error in this case was prejudicial in two respects – that:

1.   The ALJ erroneously discounted the opinions of treating physician Sacha Matthews, M.D., workers' compensation examining consultant Peter K. Esponnette, M.D., and agency examining consultant Fred Fridman, D.O., each of whom concluded that, at best, the plaintiff could reach only occasionally with his right arm – a limitation that rules out all three jobs on which the ALJ relied at Step 5, *see* Statement of Errors at 2-4, 6-7; and

2.   Any purported reliance by the ALJ on the opinions of agency nonexamining consultants William Groh, M.D., and Archibald Green, D.O., was misplaced because, (i) unlike the ALJ, they found a severe right arm impairment, and, (ii) in assessing limitations, they lacked the benefit of review of later-submitted material evidence from Dr. Matthews, *see id*. at 4-5, 8-9.

The plaintiff contends, in short, that the ALJ, as a layperson, impermissibly construed raw medical evidence to find his right arm impairments nonsevere. *See id*. at 8-9. He cites *Priest v. Colvin*, No. 1:15-cv-00379-JHR, 2016 WL 7335583 (D. Me. Dec. 16, 2016), and *Plourde v. Colvin*, No. 1:12-cv-194-JAW, 2013 WL 1345519 (D. Me. Mar. 14, 2013) (rec. dec., *aff'd* Apr. 2, 2013), in support of his bid for remand. *See id*. at 7.

For the reasons the follow, I find no reversible error.

### A.  Discounting of Matthews, Esponnette, Fridman Opinions

The ALJ acknowledged that Dr. Matthews submitted a medical source statement dated June 3, 2019, in which he indicated, *inter alia*, that the plaintiff "could lift and carry no weight" and "could occasionally perform all manipulative activities with both hands except he could never reach overhead."  Record at 28 (citations omitted).  However, she deemed it "not very persuasive[,]" explaining that it was "a checkbox form that is not supported with much explanation" and that the "stated limitations" were "extreme, such as finding" the plaintiff "exertionally incapable of lifting any weight, even though the record shows [his] right upper extremity improved with therapy." *Id*. at 30.

The plaintiff asserts that, rather than discounting the Matthews opinion, the ALJ should have adopted it pursuant to the five factors relevant to the analysis of medical opinions: supportability, consistency, relationship with the claimant, specialization, and other factors. *See* Statement of Errors at 7-8; 20 C.F.R. § 404.1520c(c). Yet, the regulations are clear that "the most important factors[,]" and the only ones an ALJ is required to discuss, are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be."

*Id*. § 404.1520c(c)(1). With respect to consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id*. § 404.1520c(c)(2).

As concerns those two key factors, the plaintiff contends that the ALJ should have deemed the Matthews opinion (i) supported by both an MRI of the right elbow revealing "tendinosis of the biceps insertion and tendinosis of the common flexor origin" and findings on examination of pain on palpation and positive Speed, Yergason's, and Tinel tests, and (ii) consistent with the record, including the findings of Drs. Esponnette and Fridman. Statement of Errors at 7-8; *see also id*. at 3, 5; Record at 1225-26, 1230-31.

These arguments do not carry the day. Dr. Matthews himself did not cite those findings in support of his opinion; as the ALJ noted, he checked boxes and offered little explanation. *See* Record at 30, 1216-21; *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) ("[M]erely checking the right boxes . . . itself goes a long way toward supporting the ALJ's determination to accord [the] opinion little weight."). And the ALJ supportably characterized the Matthews opinion as inconsistent with other evidence of record, noting that Dr. Matthews found the plaintiff "exertionally incapable of lifting any weight, even though the record shows [his] right upper extremity improved with therapy." Record at 30.

The plaintiff disputes that his right upper extremity improved with therapy, pointing to the MRI report as well as Dr. Matthews' notations on April 25, 2019, postdating all physical therapy records, that he had been "trialing therapy for the elbow pain but feels that it is not significantly improving" and had a positive Tinel test at the elbow, and on June 3, 2019, that he "still [was] having anterior elbow pain worse with pronation supination as well as elbow flexion" and had "a

6

positive Speed and Yergason's test." Statement of Errors at 2-3, 5 (citing or quoting Record at 1222, 1226, 1227, 1230).

Nevertheless, the ALJ accurately noted in a detailed summary of the evidence of record that:

1. Following a course of physical therapy from January to June 2017, the plaintiff "had resolving right lateral elbow tendinosis, was doing fairly well at his last physical therapy session, and was scheduled to follow up with his physician since his progress [had] reached a plateau[,]" Record at 23 (citing *id*. at 602);

2. Following a course of physical therapy from February to April 2019 for "right elbow pain with decreased grip strength, normal active range of motion, no signs of edema, and median nerve distribution sensory systems[,] . . . the [plaintiff] still had decreased sensory symptoms, but his pain was reduced[,]" *id*. at 27 (citing *id*. at 640, 650);

3. In the same June 3, 2019, specialized musculoskeletal examination in which Dr. Matthews recorded positive Speed and Yergason's tests, he also noted that the plaintiff had "no pain with resisted forearm pronation over the common flexor origin" and "full elbow flexion extension and full pronation supination of the forearm[,]" *id*. at 27-28 (citing *id*. at 1230); and

4. The 2019 MRI revealed "mild tendinosis of the distal biceps and common flexor origin[,]" *id*. (citing *id*. at 687).

This, in turn, constitutes substantial evidence in support of the ALJ's finding that the plaintiff's right upper extremity improved with therapy. The plaintiff fails to show that Dr. Matthews' April 5 and June 3, 2019, notes or the 2019 MRI report, all of which the ALJ summarized, *see id*. at 27-28, undermine that finding.

7

The ALJ's discounting of the Matthews opinion, hence, is supported by substantial evidence. That, in turn, is dispositive of the plaintiff's challenge to the ALJ's handling of the Esponnette and Fridman opinions, which he argues the ALJ erred in discounting "for the same reasons as [D]r. Matthews, other than they are one time examiners rather than treating specialists." Statement of Errors at 8.

### B.  Reliance on Groh and Green Opinions, Raw Medical Evidence

The plaintiff next challenges the ALJ's purported reliance on the Groh and Green opinions, which he argues cannot stand as substantial evidence of either her finding that his right arm impairments were nonsevere or her RFC determination. *See* Statement of Errors at 4-5, 8. He contends that, at bottom, the ALJ impermissibly construed raw medical evidence to deem those impairments nonsevere. *See id*. at 8-9.

The plaintiff is correct that Drs. Groh and Green found severe right arm impairments. They found a severe impairment of disorders of muscle, ligament, and fascia, *see* Record at 91, 112, and attributed their assessed exertional, postural, and manipulative limitations in part to the plaintiff's bilateral medial and lateral epicondylitis, *see id.* at 94-96, 115-16. However, any error by the ALJ in finding no severe right arm impairment is rendered harmless by her adoption of their limitations (or more stringent ones), *compare* Finding 5, *id*. at 20 *with id*. at 94-96, 115-16, unless, as the plaintiff also argues, they lacked the benefit of review of later-submitted material evidence. I am unpersuaded by the plaintiff's argument.

"The amount of weight that can properly be given the conclusions of non-testifying, non examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert." *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) (citations and internal quotation marks omitted). "In some cases, written reports submitted by nontestifying, nonexamining physicians cannot alone constitute substantial evidence, although this is not an

8

ironclad rule." *Id.* (citations and internal quotation marks omitted).  This court has noted that "there is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC," although "[f]actors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the administrative law judge." *Brackett v. Astrue*, No. 2:10-cv-24-DBH, 2010 WL 5467254, at *5 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011) (citations omitted).

The plaintiff correctly observes that neither Dr. Groh, whose opinion is dated June 14, 2018, nor Dr. Green, whose opinion is dated September 28, 2018, had the benefit of review of the Matthews opinion, dated June 3, 2019, the 2019 MRI result, or Dr. Matthews' 2019 findings of positive Speed, Yergason's, and Tinel tests.  *See* Statement of Errors at 4-5, 8; Record at 97, 118.  Nonetheless, he fails to make a persuasive case that it matters.

With respect to the Matthews opinion, both Drs. Groh and Green had the benefit of review of the opinions of Drs. Esponnette and Fridman, who had previously assessed the limitation on which the plaintiff relies to show harmful error (a limitation to only occasional reaching with the right upper extremity).  *See* Record at 96-97, 117; Statement of Errors at 6-7.[3]  In any event, for the reasons discussed above, the ALJ supportably discounted the Matthews opinion.

While the MRI reflects a diagnosis of mild tendonitis, *see* Record at 687, Drs. Groh and Green concurred that the plaintiff had a severe medically determinable right arm impairment, *see id.* at 91, 112, and the plaintiff does not explain how their awareness of the 2019 MRI report confirming mild tendinosis would have made any substantive difference, *see* Statement of Errors

---

[3] Drs. Groh and Green deemed the full panoply of limitations assessed by Drs. Esponnette and Fridman too restrictive. *See* Record at 96-97, 117.

at 4-5, 8. Indeed, the plaintiff himself describes his "right epicondylitis and tendinosis" as "longstanding diagnoses[.]" *Id*. at 3.

With respect to Dr. Matthews' 2019 positive test findings, Drs. Groh and Green noted a prior "[b]ilateral +Tinel over ulnar nerves[,]" Record at 90, 117, and the plaintiff does not explain, nor is it apparent, how Dr. Matthews' subsequent positive findings would have altered their RFC assessments. As discussed above, in the same June 3, 2019, specialized musculoskeletal examination in which Dr. Matthews recorded positive Speed and Yergason's tests, he also noted that the plaintiff had "no pain with resisted forearm pronation over the common flexor origin" and "full elbow flexion extension and full pronation supination of the forearm." *Id*. at 1230.

The plaintiff next contends that the ALJ impermissibly interpreted raw medical evidence, citing findings of normal range of motion and strength in deeming his right arm impairments nonsevere while ignoring positive tests (Speed, Yergason's, and Tinel) and evidence of pain. *See* Statement of Errors at 8-9. Yet, as discussed above, the ALJ's supportable adoption of limitations assessed by Drs. Groh and Green renders any error in failing to assess a severe right arm impairment harmless.

*Priest* and *Plourde* do not tip the scales in favor of remand. In *Priest*, remand was required when the ALJ assessed no mental limitations, rejecting "the uniform professional opinions to the contrary" of two agency nonexamining consultants and a treating professional that the claimant suffered from a severe mental impairment. *Priest*, 2016 WL 7335583, at *3. In this case, by contrast, the ALJ adopted limitations assessed by Drs. Groh and Green to account in part for the plaintiff's right arm impairments. In *Plourde,* remand was required when the ALJ found a claimant's mental impairments nonsevere, relying on the opinions of agency nonexamining consultants who had not seen later evidence reflecting a suicide attempt and an inpatient

psychiatric hospitalization and rejecting the only opinion issued in the wake of those events, that of a treating source that the claimant had marked limitations.  *See Plourde*, 2013 WL 1345519, at *1, 3-5.  In this case, as discussed above, the plaintiff has not shown that the evidence unseen by Drs. Groh and Green was material.

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of October, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge